UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERROD MARTINEZ HENRY,

        Petitioner,

                            CASE NO. 04-CV-72785-DT
v.                           HONORABLE NANCY G. EDMUNDS

THOMAS BELL,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Jerrod Martinez Henry ("Petitioner"), an inmate currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for assault with intent to murder, two counts of intentional discharge of a firearm from a vehicle, carrying a concealed weapon, and three counts of felony firearm which were imposed following a jury trial in the Oakland County Circuit Court in 2000. Petitioner was sentenced to concurrent terms of seven to 15 years imprisonment on the assault conviction and 18 months to four years imprisonment on each of the weapon discharge convictions, to be served consecutively to concurrent terms of one to five years imprisonment on the concealed weapon conviction and two years imprisonment on each of the felony firearm convictions.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, double jeopardy, the jury instructions, the admissibility of his police statements, the effectiveness of defense counsel, prosecutorial misconduct, and sentencing. For the reasons

1

stated below, the Court denies the petition for writ of habeas corpus.

I.    **Facts**

Petitioner's convictions stem from a road rage incident in which he fired two shots with a nine-millimeter semi-automatic handgun at another vehicle while driving northbound on Interstate 75 ("I-75") in Auburn Hills, Michigan on November 27, 1999.  At trial, the victim, Robert Avery ("Avery"), testified that the shooting occurred while he was driving his Chevrolet Suburban northbound on I-75.  He was driving 70 to 75 mile per hour in the third lane of the four-lane freeway heading north.  As the road began to narrow to three lanes, a black Nissan (Petitioner's car) passed him on the left and merged into traffic one car ahead of him.  The car ahead of him braked which caused Avery to slow down.  As this occurred, a red Cavalier (driven by Petitioner's sister) attempted to move into the third lane because the fourth lane was ending, but could not do so because Avery's car was in the way.  Avery explained that he could not change lanes due to traffic volume.  Eventually, Avery moved into the second lane.  The red car merged into traffic behind him and the black Nissan was driving in the middle lane in front of Avery.  The Nissan began to slow down considerably, so Avery sped up and pulled into the left lane to pass it.  As he did so, he heard an explosion in his back window and a noise in the pillar between two windows.  He saw a gouge in the window and a bullet fragment fell on his knee.  He then sped up, exited the freeway, and called 911 to report the incident.  A Michigan State Trooper subsequently arrived at the scene.  Avery denied provoking the shooting and said that he did not waive any object at the other vehicles.

Michigan State Police Sergeant Dennis Sano testified that he received a call about the shooting, spotted the cars matching their descriptions driving northbound on I-75, and followed the cars.  He noticed that the driver's side mirror on the black Nissan was broken, so he stopped

2

the car.  The red car also pulled over.  Sano testified that Petitioner, a woman (Petitioner's wife), and two children were in the car.  Sano asked for Petitioner's license and registration.  Petitioner responded that he was not speeding, but did not mention the shooting.  Sano smelled gunpowder in the car.  He asked Petitioner to exit the vehicle, patted him down, handcuffed him, and told him that his car matched the description of one reported in a shooting.  Sano asked Petitioner where the gun was located.  Petitioner told him that it was in the glove box.  Sano's backup, Trooper Trevor Radke, arrived on the scene and removed the gun from the glove box.  It was a loaded nine millimeter semi-automatic handgun which could hold 12 rounds and contained 10 rounds.  Sano explained that the gun would have to be cocked or racked to put a live round into the firing chamber.  The bullets removed from the gun were "jacketed bullets" with greater penetration power.  The police also found metal fragments from jacketed bullets in the car.

Michigan State Trooper Trevor Radke testified that he assisted Sano at the scene and removed the gun from the glove box of Petitioner's vehicle.  A live round was in the chamber of the gun.  Radke confirmed that a woman and two children were passengers in Petitioner's car.

Michigan State Trooper Nathan Ellis testified that he arrived at the scene and spoke with Robert Avery.  He said that Avery was quite upset and traumatized by the shooting.  Ellis did not find any weapon in Avery's car.  He observed a hole in the passenger window of Avery's car, traced a path to the driver's seat and found the bullet in the door pillar.  The jacket of the bullet was on the floor by the door.  Ellis also observed a second bullet hole in the back quarter panel behind the passenger door of the car.  Ellis also testified that he transported Petitioner to the Oakland County Jail.  While they were driving, Petitioner started talking, saying "I can't believe I fell into his game.  He's the one who cut me off.  I fucked up."  Ellis said that Petitioner never mentioned that he thought Avery had raised his hand at him or had a weapon.

3

Kevin Amenson, an evidence technician, testified that he processed Petitioner's and Avery's vehicles. Amenson observed a hole in the driver's outside mirror of Petitioner's car and found corresponding glass fragments on the floor of the car. As to Avery's car, Amenson found two holes he believed were caused by bullets. One was in the right rear tire wheel well and the other went through the passenger window. Amenson also testified about projected bullet paths and opined that Avery's vehicle was seven to 10 feet ahead of Petitioner's vehicle at the time of the shooting.

Petitioner's sister, Jaquetta Ratliff, testified that she was driving a red Cavalier and following Petitioner northbound on I-75 toward Saginaw. She claimed that Avery tried to veer her off the road as she attempted to move into the third lane behind Petitioner. Ratliff said that she slowed down, merged in behind Avery, and then moved into the far left lane. As that lane began to end, she tried to merge into the third lane but Avery swerved to prevent her from doing so. She thought she saw Avery waiving something in his hand when he eventually moved into the second lane and drove past. She and Petitioner were subsequently stopped by police. In the written report, she did not mention that Avery had tried to run her off the road or that he had something in his hand as he waived at her. She also stated that two of Petitioner's friends had recently been killed and there had been two deaths in their family.

Petitioner also testified on his own behalf. He claimed that Avery instigated the confrontation on the freeway by swerving at him when he was trying to pass Avery's car as they drove northbound on I-75. He also said that he saw Avery nearly ram his sister into the wall as she attempted to merge into his lane. Petitioner also testified that Avery waived at him with something in his hand, which Petitioner thought looked like a weapon. Petitioner stated that he reached for his gun in the glove box and fired two shots at Avery's car to get him away from

4

them.  He said that he told the officer that he had messed up because he had gotten caught up in

the incident and knew he had made a mistake.  He denied intending to hurt anyone, but admitted

that he shot at Avery's vehicle when it was ahead of him and accelerating.  He also admitted that

his gun was not registered, that he did not have a permit to carry it, and that he kept it loaded and

ready to fire in the glove compartment of his car.

At the close of trial, the jury found Petitioner guilty of assault with intent to commit

murder, two counts of intentional discharge of a firearm from a motor vehicle, carrying a

concealed weapon, and three counts of possession of a firearm during the commission of a

felony.  The trial court subsequently sentenced him to concurrent terms of seven to 15 years

imprisonment on the assault conviction and 18 months to four years imprisonment on each of the

weapons discharge conviction, to be served consecutively to concurrent terms of one to five

years imprisonment on the concealed weapon conviction and two years imprisonment on each of

the felony firearm convictions.

## II.    <u>Procedural History</u>

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

Appeals raising the same claims contained in his habeas petition.  The court affirmed his

convictions and sentence.  *People v. Henry*, No. 227626, 2003 WL 1439833 (Mich. Ct. App.

March 20, 2003) (unpublished).  Petitioner then filed an application for leave to appeal with the

Michigan Supreme Court, which was denied.  *People v. Henry*, 469 Mich. 877, 668 N.W.2d 908

(2003).

Petitioner thereafter filed the present petition for writ of habeas corpus asserting the

following claims:  (1) the evidence is insufficient to support his assault with intent to murder

conviction; (2) his convictions on two counts of intentional discharge of a firearm from a motor

5

vehicle violate double jeopardy; (3) the trial court violated his rights by failing to instruct the jury on manslaughter and the prosecution's duty to prove the absence of provocation, and defense counsel was ineffective for failing to request those instructions; (4) his oral statements to police were inadmissible because he was not previously advised of his *Miranda* rights, and defense counsel was ineffective for failing to seek suppression of those statements; (5) the prosecutor's improper comments denied him a fair trial; and (5) his sentence of seven to 15 years imprisonment for the assault conviction is disproportionate and an abuse of discretion. Respondent has filed an answer to the petition contending that the claims should be denied based upon procedural default and/or for lack of merit.

## III.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d

7

667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.   <u>Analysis</u>

### A.   <u>Insufficient Evidence Claim</u>

Petitioner first claims that he is entitled to habeas relief because the prosecution presented insufficient evidence to support the assault with intent to murder conviction. Respondent contends that this claim lacks merit and does not warrant habeas relief.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a conviction for assault with intent to murder requires proof beyond a reasonable doubt that the defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Hoffman*, 225

8

Mich. App 103, 111, 570 N.W.2d 146 (1997); *see also* Mich. Comp. L. § 750.83.

Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove

the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993),

including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563

N.W.2d 31 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that the

prosecution presented sufficient evidence to support Petitioner's conviction. The court stated:

> The evidence in this case, viewed in a light most favorable to the prosecution, was sufficient to enable a jury to infer all the necessary elements of assault with intent to commit murder, including the requisite intent. Here, the evidence at trial clearly established that, following a disagreeable encounter on the expressway, defendant fired the nine-millimeter, semi-automatic handgun twice at the complainant's vehicle, as the complainant was passing him. It is well established that the intent to kill may be inferred from the use of a dangerous weapon.... There was also evidence that defendant shot at the complainant's vehicle with "jacketed bullets," which have greater penetration power. In addition, one of the two bullets went through the passenger side rear door window, past the driver's front seat, within inches of the complainant's face, and hit the driver's side door pillar. This evidence, viewed in a light most favorable to the prosecution, was sufficient to sustain defendant's conviction for assault with intent to murder.

*Henry*, 2003 WL 1439833 at *1 (internal citations omitted).

Having reviewed the record, this Court agrees and finds that the Michigan Court of

Appeals' decision is neither contrary to nor an unreasonable application of *Jackson* or of the

facts. As noted by the Michigan Court of Appeals, the verdict was supported by the evidence

that Petitioner shot at the victim twice while they were driving on a busy freeway, that

Petitioner used a nine-millimeter semi-automatic handgun with jacketed bullets to commit the

shooting, and that Petitioner nearly struck the victim in the head. Given such evidence, a

rational factfinder could reasonably conclude that Petitioner committed the assault and that he

9

acted with sufficient intent to kill.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial.  However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).  It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of assault with intent to commit murder beyond a reasonable doubt was reasonable.  Habeas relief is not warranted on Petitioner's insufficient evidence claim.

B.    Double Jeopardy Claim

Petitioner next contends that he is entitled to habeas relief because his convictions on two counts of intention discharge of a firearm from a motor vehicle violate double jeopardy.  Respondent contends that this claim is barred by procedural default and/or lacks merit.

As an initial matter, the Court notes that Petitioner is not entitled to federal habeas relief on any claim that his intentional discharge of a firearm from a motor vehicle convictions violate the Double Jeopardy Clause of the Michigan Constitution.  In reviewing a habeas corpus petition, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  The Michigan Court of Appeals' determination that the Michigan Constitution was not violated is entitled to

10

deference on habeas review as state courts are the final arbiters of state law.  *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  The Court will therefore proceed to the federal issue.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

Federal courts determine whether two crimes constitute the same offense for double jeopardy purposes by applying the same-element test originally set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000).  This test "inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy bars additional punishment and successive prosecution."  *Dixon*, 509 U.S. at 696; *Blockburger*, 284 U.S. at 304.

In reviewing this claim for plain error, the Michigan Court of Appeals ruled as follows:

Both the United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense, including multiple punishments for the same offense.  US Const, Am V; Const 1963, art 1, § 15; *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001); *People v Torres*, 452 Mich 43, 63-64; 549 NW2d 540 (1996).  However, there "is no violation of double jeopardy

protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995). In *Lugo*, this Court explained that the defendant's dual convictions of felonious assault and assault with intent to do great bodily harm were permissible, although they both arose from the same altercation between the defendant and a police officer, because each conviction was predicated on a separate and distinct act occurring one after the other during the altercation. *Id.* at 709. Also, in *People v Rogers*, 142 Mich App 88, 89, 92; 368 NW2d 900 (1985), this Court upheld the defendant's convictions of three counts of first-degree criminal sexual conduct because each was based on a separate and distinct act of penetration that the defendant either committed or aided and abetted.

We conclude that there was no double jeopardy violation in this case. The crime of intentional discharge of a firearm from a motor vehicle requires proof that the defendant discharged a firearm from a motor vehicle in a manner so as to endanger another person. MCL 750.234a; CJI2d 11.37; *see also People v Cortez*, 206 Mich App 204, 205-206; 520 NW2d 693 (1994). Here, the evidence demonstrates that defendant twice discharged his firearm from his car at the complaint's vehicle during an assault upon the complainant. One bullet went through the rear passenger window of the complainant's truck, and the other hit the right, rear quarter panel. There was evidence that, in order to fire a bullet from defendant's semi-automatic handgun, the firearm had to be "cock [ed]" or "rack[ed]" between each shot. This necessarily required a momentary delay before defendant again aimed and fired the gun a second time. Additionally, the second bullet was necessarily fired from a different location further up the highway, where defendant's and the victim's vehicles were hurdling down the interstate at seventy miles per hour when the shooting took place. Taking into consideration those facts along with the clear legislative intent to protect the public from the dangers of guns being discharged from vehicles, defendant committed and completed two distinct acts during the same episode of criminal behavior, and double jeopardy provisions do not prohibit multiple punishments for these separate acts. *Lugo, supra* at 708-709.

*Henry*, 2003 WL 1439833 at *2.

This decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts. The record reveals that Petitioner fired two shots at the victim while driving his car down the freeway. Although Petitioner fired the shots during one road rage incident, he nonetheless fired two distinct shots at the victim while they were driving their vehicles northbound on I-75. The acts were separate in time and place, albeit

12

spanning only a brief period and a short distance.  A finding that there were two distinct acts "necessarily precludes a violation of the double jeopardy clause."  *Costo v. United States*, 904 F.2d 344, 346 (6th Cir. 1990); *see also Smith v. Mills*, 98 Fed. Appx. 433, 436 (6th Cir. 2004) (two attempted rape convictions did not violate double jeopardy where evidence indicated that the defendant made two separate attempts to penetrate the victim).  Given the elements of the offense and the evidence presented, the Court concludes that the Michigan Court of Appeals' reasonably determined that Petitioner's convictions on two counts of intentional discharge of a firearm from a motor vehicle do not violate double jeopardy principles.  Habeas relief is not warranted on this claim.[1]

  C. <u>Jury Instruction Claims</u>

  Petitioner also asserts that he is entitled to habeas relief because the trial court failed to properly instruct the jury on the elements of assault with intent to murder and give instructions on manslaughter and the absence of provocation.  Petitioner relatedly asserts that defense counsel was ineffective for failing to request such instructions.  Respondent contends that the jury instruction claims are barred by procedural default and that these claims otherwise lack merit.

  Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991).  In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the

---

[1]Because the Court has denied this claim on the merits, it need not address the issue of procedural default.

procedural default. 433 U.S. at 85. In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on Petitioner's jury instruction claims, the court relied upon a state procedural bar -- defense counsel's agreement with the trial court's proposed instructions and concomitant failure to object to these matters at trial. *See Henry*, 2003 WL 1439833 at *3-4. Such a waiver is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial errors. *See People v. Carter*, 462 Mich. 206, 215, 612 N.W.2d 144 (2000); *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991) (the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial errors). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail

14

to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied the jury instruction claims based upon Petitioner's waiver of the claims at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner alleges that defense counsel was ineffective as cause to excuse his default. Petitioner, however, cannot establish cause or prejudice to overcome his default or demonstrate that defense counsel was ineffective as the jury instruction claims lack merit.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it runs afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72. State law instructional errors rarely form the basis for federal habeas corpus relief. *Id*. at 71-72.

The failure to give a defense instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the

15

defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

In reviewing these claims, the Michigan Court of Appeals determined that Petitioner was not prejudiced by the trial court's instructions and counsel was not ineffective in this context. *See Henry*, 2003 WL 1439833 at *3-4.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application thereof. The jury instructions as a whole were adequate to protect Petitioner's rights. The jury was properly instructed that Petitioner could be found guilty only if the jurors found that he committed the crimes charged. The trial court also adequately instructed the jury on the crime of assault with intent to murder. The jury was also well aware of Petitioner's defense that he lacked the intent to kill. The jury could not have accepted Petitioner's claim without acquitting him under the instructions given by the trial court, and this Court must presume that the jury followed the court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also United States v. Olano*, 507 U.S. 725, 740 (1993). Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction. *See, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990). Petitioner has not established that the jury instructions, read as a whole, rendered his trial fundamentally unfair.

Petitioner has also not established that a miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298,

16

326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."
*Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  His jury instruction claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas relief.

Furthermore, Petitioner has not established that defense counsel was ineffective for failing to object to the jury instructions or request additional instructions.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

As noted by the Michigan Court of Appeals, because the jury instructions in this case were appropriate, Petitioner cannot establish that defense counsel's performance was deficient and/or that he was prejudiced by counsel's conduct as required by *Strickland*. Habeas relief is therefore not warranted on such a basis.

D.    *Miranda* Claims

Petitioner next contends that he is entitled to habeas relief because the trial court erred in admitting statements he made to police before being advised of his *Miranda* rights. Specifically, Petitioner claims that his statement to police concerning the gun's location in his car and the statements he made while being transported to the county jail were inadmissible because he had not been advised of his constitutional rights. Petitioner relatedly claims that defense counsel was ineffective for failing to seek suppression of the statements. Respondent contends that the *Miranda* claims are barred by procedural default and that these claims otherwise lack merit.

As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules if the last state court rendering a judgment in the case rests its judgment on the procedural default. *See Wainwright*, 433 U.S. at

18

85; *see also Harris*, 489 U.S. at 263-64.

Here, the Michigan Court of Appeals rendered the last reasoned opinion and relied upon a state procedural bar -- Petitioner's failure to object to the admission of the statements at trial. *See Henry*, 2003 WL 1439833 at *4. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review such claims. *See People v. Chalmers*, No. 251974, 2005 WL 415282, *2 (Mich. App. Feb. 22, 2005); *People v. McCrady*, 244 Mich. App. 27, 29, 624 N.W.2d 761 (2000); *see also Carines*, 460 Mich. at 763; *Coleman*, 501 U.S. at 750-51. Moreover, the state court sufficiently relied upon the default despite reviewing the claim for plain error. *See Hinkle*, 271 F.3d at 244. The Michigan Court of Appeals denied Petitioner's *Miranda* claims based upon his failure to object at trial.

Petitioner alleges that defense counsel was ineffective as cause to excuse his default. Petitioner, however cannot establish that counsel erred or that he was prejudiced as these claims lack merit.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that statements made during a custodial interrogation of a suspect are inadmissible at trial, unless the defendant has voluntarily and knowingly waived certain rights prior to making the statements. The Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

Petitioner's claim that the admission of his statements about the gun's location in his car violated *Miranda* is without merit. In *New York v. Quarles*, 467 U.S. 649, 657-58 (1984), the Supreme Court announced a public safety exception to this general rule whereby a police

19

officer's failure to give *Miranda* warnings may be excused when the officer's questions are objectively reasonably necessary to protect the police or the public from immediate danger. Relying upon *Quarles*, the Michigan Court of Appeals in this case rejected Petitioner's claim that the admission of his statement about the gun's location violated *Miranda*. *Henry*, 2003 WL 1439833 at *4-5. This decision is consistent with Supreme Court precedent and constitutes a reasonable application of federal law and the facts. As noted by the state court, the responding police officer was informed that a shooting had occurred on I-75 and given a description of the vehicle. He stopped Petitioner's car, which matched the given description, smelled gunpowder inside the car and observed a woman and two children in the car. Given these facts, it was objectively reasonable for the officer to inquire about the gun's location prior to providing *Miranda* warnings in order to insure his safety and that of the others present. Habeas relief is not warranted on this basis.

Petitioner's claim concerning the admission of his statements to police while being transported to the county jail likewise lacks merit. Interrogation, as conceptualized in *Miranda*, "must reflect a measure of compulsion above and beyond that inherent in the custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Interrogation under *Miranda* includes not only express questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit and incriminating response from the suspect." *Id.* at 301. "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478; *see also United States v. Jones*, 128 Fed. Appx. 490, 494 (6th Cir. 2005). The record in this case reveals that Petitioner started talking to the police officer about the incident on his own without any questioning by the police. Because Petitioner's statements were voluntary and not the result of an interrogation, he

20

has failed to establish a *Miranda* violation.

As noted, Petitioner has also not established that a fundamental miscarriage of justice has occurred under the standard set forth in *Schlup, supra*.  His *Miranda* violation claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

Lastly, because the *Miranda* claims lack merit, Petitioner cannot establish that defense counsel was deficient for failing to seek suppression of the statements or that he was prejudiced by counsel's conduct so as to warrant relief pursuant to *Strickland, supra*.

       E.      <u>Prosecutorial Misconduct Claim</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution made improper comments to create sympathy for the victim.  Respondent contends that this claim is barred by procedural default and lacks merit.

As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules if the last state court rendering a judgment in the case rests its judgment on the procedural default.  *See Wainwright*, 433 U.S. at 85; *see also Harris*, 489 U.S. at 263-64.

Here, the Michigan Court of Appeals rendered the last reasoned opinion and relied upon a state procedural bar -- Petitioner's failure to object to the alleged improper remarks at trial. *See Henry*, 2003 WL 1439833 at *6.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review allegations of prosecutorial misconduct.  *See, e.g., People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman*, 501 U.S. at 750-51.  Moreover, the state court sufficiently relied upon the default despite reviewing the claim for plain error.  *See Hinkle*, 271 F.3d at 244.  In this case, the Michigan Court of Appeals denied this claim based upon

21

Petitioner's failure to object at trial.

Petitioner neither alleges nor establishes cause to excuse his default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court notes that Petitioner cannot establish prejudice as this claim lacks merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so

22

pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

In reviewing this claim for plain error, the Michigan Court of Appeals determined that the prosecutor's references to the victim's health and the value of his life were relatively brief, were related to the evidence and/or were responsive to defense arguments, and were not sufficiently inflammatory to prejudice Petitioner.  *See Henry*, 2003 WL 1439833 at *6.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  Generally, a prosecutor cannot take actions which are "calculated to incite the passions and prejudices of the jurors."  *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  The prosecutor's reference to the victim's medical condition was based upon the trial testimony and was not misleading.  While it tended to create some sympathy for the victim, it was a brief comment and not particularly inflammatory.  The same can be said for the prosecutor's deer analogy and comment on the value of life, which was made in response to defense arguments.  Moreover, even if the prosecutor erred, Petitioner has not shown that any error was so flagrant as to deprive him of a fundamentally fair trial.  While the prosecutor's comments were deliberate, they were relatively isolated in nature, not misleading, and not overly prejudicial given the circumstances of the shooting and defense arguments.  More importantly, given the evidence at trial, including the victim and police testimony, it cannot be said that the prosecutor's disputed remarks rendered Petitioner's trial fundamentally unfair.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred under the standard set forth in *Schlup, supra*.  His prosecutorial misconduct claim is

thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

      F.    <u>Sentencing Claim</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because his sentence of seven to 15 years on the assault conviction is disproportionate and an abuse of discretion. To the extent that Petitioner asserts that his sentence is disproportionate under state law, *see People v. Milbourn*, 435 Mich. 630, 636, 461 N.W.2d 1 (1990) (a criminal sentence must be proportionate to both the offense and the offender), he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).

Petitioner is also not entitled to habeas relief on any claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without the possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was sentenced to a term of seven to 15 years imprisonment on his assault with intent to murder conviction. As noted by the Michigan Court of Appeals, this sentence was within the sentencing guideline range, *see Henry*, 2003 WL 1439833 at *7, as well as the

statutory maximum.  *See* Mich. Comp. Laws § 750.83.  Accordingly, this Court concludes that the trial court acted within its discretion in imposing Petitioner's sentence and there is no extreme disparity between his crime and sentence so as to offend the Eighth Amendment. Habeas relief is not warranted on this claim.

**V.**      **Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 18, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 18, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager